BLANCHE O'BRIEN, individually and as executrix, &c., complainant,

*v.*

AUGUSTINE L. HUMES, executor, &c., et al., defendants.

[Submitted February 4th, 1924.    Decided February 28th, 1924.]

Where testator made adequate and independent provisions in his will for the education, support and maintenance of his children, and by a subsequent provision gave his widow the discretion and authority to establish and maintain as many homes and places of residence as she thought proper, "for the benefit of herself and testator's children," and directed that the cost of the upkeep and maintenance of such homes and places of residence should be borne and paid for in equal shares by the widow and from the income of each of the children's share in the residuary estate during their minority; upon the remarriage of the widow and the permanent residence of her second husband in such homes or places of residence, the executors and trustees are not authorized to charge against or to pay from the income of any of the children any part of the additional cost of such upkeep and maintenance which is due to, or is caused by, the permanent residence in such homes or places of residence of the widow's second husband.

On bill, &c.

*Messrs. Pitney, Hardin & Skinner (Mr. John R. Hardin),* for the complainant.

*Messrs. Lindabury, Depue & Faulks (Mr. Frederic. J. Faulks),* for the defendants.

FOSTER, V. C.

This action is brought to obtain a construction of certain provisions of the will of Karl G. Roebling, who died on May 29th, 1921, leaving him surviving his widow, the complainant, and a son, who is now nineteen years old, and two daughters, who are now sixteen and twelve years old, respectively.

During his lifetime testator maintained two homes, one in Trenton and the other in Spring Lake.

On April 4th, 1923, the widow remarried, her second husband being Arthur O'Brien, of Washington, D. C., and since her remarriage she has maintained homes at Washington and Spring Lake for herself and her second husband and the children, although the residence at Spring Lake has not been occupied since her remarriage. The cost of maintaining these homes has been about the same as testator expended for such purposes.

It is admitted that Mr. O'Brien does not contribute anything to the cost of the upkeep and maintenance of either home, although admittedly he has the same enjoyments and benefits therefrom which they provide for complainant and her children.

This situation has caused a difference of opinion between the executors on the construction to be given to paragraph 8 of the fourth article of testator's will. This article, after dividing generally the residuary estate into four equal parts among the widow and children, by a number of paragraphs makes certain specific provisions for them viz.:

Paragraph 1 gives one share of the residuary estate to complainant absolutely.

Paragraph 3 gives the three remaining shares in trust for the benefit of each of his children, with directions to the trustees to collect the income therefrom and pay over, or to apply the net income thereof, or so much as may be deemed advisable, in their discretion, for the education, support and maintenance of each child until he or she shall attain the age of twenty-one years, when such share, with all accumulated income thereof, is to be paid to such child. Paragraphs 5 and 7 provide for the disposition of the share of any child not attaining his or her majority.

Paragraph 8, the main cause of this controversy, is as follows:

"VIII. If my said wife shall survive me I direct that the costs and expenses of the upkeep and maintenance from time to time of all residences and homes kept or maintained by my said wife for the

benefit of herself and for the benefit of my children (including both my children specifically named and any children of my marriage born subsequent to the execution of this my will, who shall survive me, or who shall be born after my death) or for the benefit of one or more of my children, shall be divided into a number of parts equal to one more than the number of all such of my children for whose benefit such residences and homes shall be maintained, who shall from time to time be living, who shall not have attained the age of twenty-one years and who shall remain unmarried, to deduct an amount equivalent to one such part from each share of the rents, incomes, dividends and profits of my residuary estate, hereinbefore directed by Paragraphs III., V. (C) and VII. of this Article Fourth of this my will, to be applicable to the education, support and .maintenance of each such child of mine, and to pay the amount of each such part of said costs and expenses to my wife, to be utilized by her as the share of such child of mine in defraying the said costs and expenses of upkeep and maintenance."

Until the remarriage of the complainant the executors were in accord in charging, under the directions of paragraph 8, the complainant and each of the three children with one-quarter of the cost of the upkeep and maintenance of the homes in Trenton and at Spring Lake, which amounted to from $60,000 to $80,000 annually, and which was about what it cost to maintain these homes while testator was living.

The marriage of complainant to Mr. O'Brien, and the fact that he has become and will continue to be a permanent resident of, and one of those for whose benefit the present residences are maintained, caused the defendant executor to question the legality of hereafter continuing to charge one-quarter of the entire cost of the upkeep and maintenance of these homes to each of the children.

Defendant's contention is that Mr. O'Brien should contribute his proportionate share of such cost, or, to state it differently, that the children's share of the income from their respective portions of the residuary estate should not be called upon to pay any additional cost of the upkeep and mainte-nance of these homes which is due to, or is caused by, the fact that Mr. O'Brien is now a permanent resident therein and is receiving the equal benefits of these homes with complainant and testator's children.

Complainant contends that inasmuch as testator imposed no restrictions upon her remarrying, and gave her absolute discretion as to the number of places of residence and homes she could establish and maintain, and imposed no limitation upon those who should be entitled to reside therein, that the court is without authority to relieve the children from contributing their proportionate share of the total cost of the maintenance of such homes, and that for the court to do so, would be in effect to write a new will for the testator.

Both of these contentions are based apparently upon the assumption that the residence of Mr. O'Brien in these homes will of necessity add materially to the cost of their upkeep and maintenance.

From this recital it will be seen that the question presented for determination is this: Does the fact that complainant's second husband is receiving, and will continue to receive, without cost to him, the benefits and advantages of the homes which complainant is maintaining in Washington and at Spring Lake, relieve testator's children in any way, or to any extent, from each contributing one-quarter of the total present and future cost of the maintenance of these homes?

The court cannot, of course, write a new will for testator, nor can it place any additional burden upon testator's children, nor enlarge or increase the charge upon their respective income, for the purposes stated, than the testator himself imposed.

It is quite clear that testator had certain definite objects in mind which he desired to have carried into effect by the provisions of the fourth article of his will.

By paragraph 3 he made special and independent provision for the education, support and maintenance of his children, and under this provision the boy is now in college, the older girl is in a boarding school, and the youngest child is living at home with complainant while attending day school. By paragraph 8 testator gave his widow authority to establish and maintain one or more homes or places of residence "for the benefit of herself and for the benefit of my chil-

dren." The only opportunity the older children have to derive any benefit from such homes or residences is during their vacations.

The cost of the upkeep and maintenance of these homes and places of residence testator directed should be borne equally by those for whose benefit he authorized their establishment and maintenance, viz., his widow and children.

Unless it can be said that the expression "for the benefit of herself," used by testator in this connection, is sufficiently comprehensive to include the second husband of his widow, I cannot understand how it can be claimed that testator by the use of this expression (or by any other expression or statement in his will) contemplated the possible remarriage of his widow, and intentionally imposed upon his children, upon the happening of such an event, the duty and obligation of paying from the income of their respective shares of his residuary estate, a proportionate part of the increased cost of maintaining a home or homes for the benefit, in part at least, of his widow's second husband. The strange and peculiar position in which testator would thus be placing his children would be more pronounced if complainant had married a widower with several children, all of whom made their home with her, or if, as a result of her marriage, children are born to her and live with her in the homes she has or may establish and maintain under paragraph 8.

There are authorities among the English cases giving some support to complainant's contention, but as Chancellor Zabriskie pointed out in *McKnight's Exrs.* v. *Walsh, 23 N. J. Eq. 136; affirmed, 24 N. J. Eq. 498,* these cases are founded upon the law of primogeniture, and the established custom among the nobility and gentry by which the heir upon whom the family seats devolves, as well in infancy, as when of age, is by their custom bound to keep the family mansion as a home for all members of the family.

Fortunately, such custom does not prevail here, and, of course, it does not, and it could not, help complainant's position, even if the provisions of the will were not expressly to the contrary.

Counsel for complainant insists upon a strict and literal construction of paragraph 8, and he should have it. But in my view such construction does not support his contention, nor produce the result he desires. For what this construction requires, and it is all it requires, is that testator's children shall contribute a proportionate share to the payment of the cost of the upkeep and maintenance of such homes as complainant may see fit to establish and maintain "for the benefit of herself and for the benefit of my (testator's) children."

If complainant sees fit to increase the cost of such maintenance by adding to those testator specifically designated, others who receive the benefits of such homes, she may do so, but she cannot charge such additional cost to testator's children.

My conclusion is that under the provisions of paragraph 8 of the fourth article of the will, the executors are not authorized to pay from the income of any of the children's share of the residuary estate any part of the additional cost of the maintenance of these residences and homes, which is caused by, or is due to, the permanent residence therein of Mr. O'Brien.

A decree will be advised accordingly.